**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FITNESS QUEST INC., | ) | CASE NO.  5:06CV02691 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| JONATHAN MONTI, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

The parties came before the Court on June 26, 2007 for a hearing on the proper construction to be accorded the claims in the subject patent, commonly known as a *Markman* hearing.  *See Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996).

Following review of the parties' briefs, argument and the presentation of exhibits, as well as consideration of the legal issues presented by this matter, the Court reaches the conclusions reflected in this Memorandum Opinion and Order.

***The 749 Patent***

Defendant Jonathan Monti was one of the inventors listed on Patent Number US 6,932,749 (the "749 Patent") and is, for purposes of this litigation, the patent holder.  The 749 Patent was issued for an invention that "provides a means of exercising wherein the gross body movements of the body during exercise are Kinesiologically Correct," and that provides, at the option of the user, either assistive or resistive force, such that the exercises are made correspondingly easier or more difficult, to address the needs of both persons with limited physical abilities and persons with exceptional physical abilities, such as trained athletes.  *See*

Abstract, 749 Patent.

Plaintiff Fitness Quest, Inc., markets and sells the Ab Lounge® exercise product, an exercise device intended to exercise specifically the abdominal muscles in a "jack-knife" fashion. Fitness Quest Inc.'s *Markman* Brief (Doc. 30) at 2. Fitness Quest filed this lawsuit seeking a declaratory judgment as to a claimed confidentiality agreement and as to non-infringement and the alleged invalidity/unenforceability of the 749 Patent. Monti has counterclaimed seeking damages for infringement and breach of the claimed confidentiality agreement. The parties' arguments, relating as they do to the 749 Patent, require that certain terms within the claims in that patent be considered, to determine whether construction is required. The parties have asked this Court to consider certain language within Claims 15, 20 and 28 of the 749 Patent.

### Standard of Decision

At this stage of the proceedings, the Court's task is to examine the terms of the patent claims presented by the parties, identify those that require construction and provide the correct construction of those terms. Validity, infringement and other ultimate issues are not proper subjects of this Court's present consideration.

> "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.

*Orion IP, LLC, v. Staples, Inc.*, 406 F. Supp. 2d 717, 722 (E.D. Tex. 2005) (internal citations omitted). "Although extrinsic evidence can be useful, it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* at 723 (citation

omitted).  "Generally speaking, we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  What the Court must consider, though, is the ordinary and customary meaning to a person of ordinary skill in the art at issue as of the time of the invention, rather than the ordinary and customary meaning to a lay person.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  The goal of claim construction is not to "dumb down" the language of the claim to make it entirely accessible to a lay person, but rather to ensure that the language of the claim is intelligible to one ordinarily skilled in the art at the time of the invention.

In this case, the parties submitted briefs in advance of the hearing, as well as a joint claims construction chart, reflecting their respective positions as to first, whether the referenced terms required construction, and then (if so), what that construction should be.  The parties then presented argument and exhibits in a *Markman* hearing, and followed with post-hearing briefs, charts and revised exhibits.  The Court's conclusions, based on these materials and the applicable law, are enumerated below.  For ease of reference, the Court attaches as Appendix A hereto the specific 749 Patent claims at issue and as Appendix B hereto a chart reflecting the claim terms at issue, the parties' proposed constructions and the Court's determination as to each term.

### *Claims Construction – Claim 15*

**Preamble**

Fitness Quest originally contended that the Preamble to Claim 15 is a limitation to the language of Claim 15 and therefore requires construction; Monti denied that construction is required, but argued in the alternative that, if construction is required, a much simpler construction is in order.  Fitness Quest now has conceded that the terms at issue in its proposed construction of the Preamble to Claim 15 are before the Court in its consideration of the terms in

the body of Claim 15, and Fitness Quest therefore has acknowledged that the Court need not construe the Preamble. Fitness Quest Inc.'s Post-*Markman* Hearing Brief (Doc. 43) at 4-5. This Court therefore will not construe the Preamble to Claim 15.

**"an elongated user support"**

The parties agreed that this element required construction; they initially disagreed on the proper construction to give it.

As previously discussed, when a court is asked to construe a claim, it must first determine whether construction is necessary, giving the words of the claim their plain, ordinary meaning as understood by one skilled in the art at hand. Where, as here, the parties have agreed that construction is necessary, but disagree about the proper construction, the Court must consider the original language and the proffered constructions.

The Court agrees that construction of the language is necessary; greater specificity is needed. That said, Fitness Quest's originally proposed language was too narrow – including a requirement relating to "prone back extension exercise" – and Monti's originally proposed language was too broad.

Fitness Quest has modified its original proposed construction, as reflected in the attached Appendix B. Review of the transcript of the hearing reveals that the parties discussed the following construction: "A central support and stationary stabilizing member that is longer than it is wide." *See* Transcript of June 26, 2007 *Markman* Hearing ("Transcript") at 88, 93. Fitness Quest's post-hearing brief reflects essentially this construction. Doc. 43 at 5.

In his post-hearing brief, however, Monti argues that the word "stationary" should not be "read into" the claim. Monti Amended Post-Hearing Brief (Doc. 45) at 7. He further offers a single sentence stating that the words "main central" should not be included in the claim, either, but without any further discussion. *Id.*

- 4 -

This Court finds that a combination of the proposed constructions offered by the parties is appropriate, as follows: "a central support and stabilizing member that is longer than it is wide."

**"body pad"**

Fitness Quest has proposed a 71-word construction of this two-word phrase; Monti contends that no construction is required.

Much of Fitness Quest's proposed construction of "body pad" goes to the specific function of the body pad within Claim 15. This construction is unduly limiting, in that "body pad" is used in other claims, as well.

> Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal citations omitted).

If this Court were to impose the limitations proposed by Fitness Quest on "body pad" within Claim 15, those limitations of necessity would be imported to other claims where "body pad" is found. Neither party has argued or briefed the effect of these limitations on the other claims in the 749 Patent, but this Court is reluctant to act so broadly when it is not necessary.

In identifying the difference between the original language and its proposed construction, Fitness Quest explained at the hearing that, "[O]ne of the things that's incorporated in our construction is the concept of the body pad being angular or angled, which is not in theirs." Transcript 96. As Monti's counsel astutely noted, to identify the difference was to identify the problem with Fitness Quest's proposed construction: "In the words body pad there is no requirement that it be angularly adjustable as proposed in the construction." Transcript

104.  Fitness Quest's proposed construction limits the term "body pad" beyond what is necessary to a clear understanding of the claim.

"Body pad" is not a term that requires construction.  Its ordinary, customary meaning to one skilled in the art is sufficiently clear that neither Fitness Quest's proposed explosion of words nor Monti's proposed alternative construction is necessary.  This Court declines to construe this term.

**"guide member"**

The parties agreed that this element required construction; they continue to disagree on the proper construction to give it.  In its post-hearing brief, Fitness Quest has limited its proposed construction somewhat; its construction remains, however, substantially more detailed than that offered by Monti.  *See* Appendix B.

The parties devoted substantial time at the hearing to the question of whether this element – whether in its original form or in either of the proposed constructions offered by the parties – was a functional or a structural element.  Fitness Quest contended that "guide member" was structural language without an accompanying structural description; Monti contended that Fitness Quest was attempting to read the element as a means-plus-function element, even though "guide member" in itself does not appear to be a means-plus-function element.

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 para. 6 (2001).  "[This section] permits an applicant to express a claim limitation as a means or step for performing a specified function without claiming the structure that performs the function."  *Biomedino, LLC, v. Waters Tech. Corp.*, 2006-1350, 2007 U.S. App.

- 6 -

LEXIS 14303 *2 (Fed. Cir. Jun. 18, 2007).  In return for the opportunity to claim generically, however, "the applicant must indicate in the specification what structure constitutes the means." *Id.* *3.

At the hearing, Fitness Quest contended that Monti identified "guide member" as a structural component but made no reference to any actual structure; Monti declared that Fitness Quest was improperly reading "guide member" as a means-plus-function element, when it was a structural element.  Transcript 112, 119.  In fact, it is clear to this Court that "guide member" is not a means-plus-function element.

"Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."  *Phillips*, 415 F.3d at 1311 (citation omitted).  As in *Phillips*, "guide member" is not a "purely functional placeholder in which structure is filled in by the specification." *Id.*  "Guide member," while perhaps not ideally specific, plainly is intended to identify a structure, not a means for achieving a particular goal.

Monti further complains that Fitness Quest's proposed construction of the term reads into Claim 15 – an independent claim – the adjustability limitations from the dependent claim, Claim 16.  Transcript 118.  Fitness Quest contends that its construction does not go so far as Claim 16's limitation as to how the guide member and force producing assembly are attached – that is, in an adjustable fashion.  Doc. 43 at 6-7.

Plainly, if Fitness Quest were understood to be importing elements of Claim 16 into Claim 15, that would be improper.  "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1315 (citation omitted).  By the same token, the constructions offered by both parties include functional language, which both parties apparently

deemed necessary to an intelligible construction of the element.

The construction offered by Monti comes closer to a proper construction of "guide member" than the construction offered by Fitness Quest, as it is more limited and more reflective of both the meaning of "guide member," as used throughout the patent and its use in the specific context of Claim 15.  Problematic in Monti's construction, among other language, however, is the word "part."  As Fitness Quest noted, "part" is a generic – usually singular – word that provides little information concerning the referenced term beyond that it is a single (non-multi-part) piece within the referenced device.  Transcript 112-13.  This Court agrees that more specificity – without unduly constricting the claim language – is desirable in construing this term.

For these reasons, the Court has determined that the following language, taken with modification from the construction proposed by Monti, will most appropriately construe the meaning intended to be conveyed by the term "guide member:"  "a structure that guides the directional movement of the user as the user performs the exercise."

**"pivotally secured"**

The parties agreed that this element required construction; as with prior terms, they continue to disagree on the proper construction to give it.

In its post-hearing brief, Fitness Quest modifies its construction to bring it closer to Monti's proposed construction; the items in Fitness Quest's construction to which Monti objected at the hearing, however, still are present.

Fitness Quest includes two concepts in its construction to which Monti chiefly objects:  first, that the guide member is "directly" secured to the user support; and second, that the user support pivots around a "stationary" pivot point.  Transcript 126.  Monti contends that these concepts are not necessary to an understanding of the term "pivotally secured," and accuses

Fitness Quest of looking to the drawings and preferred embodiments to impermissibly limit its construction of "pivotally secured."  Transcript 128.

Fitness Quest's arguments about the necessity of the words "directly" and "stationary" to an understanding of "pivotally secured" are unpersuasive.  Monti's construction – "secured through a pivoting joint" – conveys the meaning of the term without adding unnecessary language (and hence inappropriate restriction) to the construction.  This Court adopts Monti's construction:  "secured through a pivoting joint."

**"adjacent"**

The parties agreed at the hearing that this term did not require construction.  This Court therefore will not construe it, but will leave it in the patent as written.

**"first end of the body pad/second end of the body pad"**

Fitness Quest contends these terms require construction; Monti declares that no construction is required.  Oddly, the parties seem to agree on the proper meaning to assign to the terms; they simply disagree on whether that meaning requires this Court to construe the terms.

Fitness Quest offers constructions of the terms that, it contends, are found in the claim language itself.  Transcript 133-34.  It then contends that Monti agreed at the hearing to the constructions proposed by Fitness Quest.  Doc. 43 at 8.  Fitness Quest has misconstrued the transcript of that hearing.

What Monti expressed at the hearing was his contention that, because defining language was contained in the very claim where the disputed terms were found, there was no need to construe the terms.  Transcript 134-35.  This Court agrees with this as a general maxim of patent law.  A term, defined within the claim where it is found, does not otherwise require construction.  *See Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms.").  These terms do not require construction.

**"transversely oriented support extending across the user support"**

**"extending substantially across the entire lateral extent of the body pad"**

The parties addressed these claims together in the hearing.  Fitness Quest contends that they require substantial construction; Monti contends that no construction is required.

Fitness Quest argues that its proposed construction is warranted, based on the prosecution history and Monti's efforts to distinguish his proposed invention from the prior art – specifically, the Harris patent referenced in Fitness Quest's initial *Markman* brief at 18-19 and Exhibit 9 thereto.  Fitness Quest makes this leap to the prosecution history, however, without explaining why the language of the claim requires any such resort.

Under *Markman*, the court determines as a matter of law the scope and meaning of patent terms that are in dispute; "[t]he first step of this analysis requires the court to consider the words of the claims."  *Apple Computer v. Burst.com, Inc.*, no. C 06-00019MHP, 2007 WL 1342504 (N.D. Cal. May 8, 2007) *2 (citation omitted); *see also Phillips*, 415 F.3d at 1314. Fitness Quest appears to be asking this Court to leapfrog over the language of the claims and the specification directly to the prosecution history.  This Court is not inclined to accept this invitation.

Fitness Quest seeks to inject concepts including "extends perpendicular," "positioned vertically," "suitable distance" (which counsel at the hearing conceded could be understood to mean "sufficient distance"), that are found nowhere in the claim at issue.  Monti contends that the language, when considered in the context of Claim 15, is clear and requires no construction. This Court agrees and therefore declines to construe either term.

**"such that a user may rest their [sic] torso thereupon while performing back extensions"**

The primary term that Fitness Quest contends requires construction is the single

word "torso;" Monti contends the term requires no construction, but argues that if construction is required, his broader proposed construction is more appropriate.

Fitness Quest has not given the Court very much to work with on this proposed construction; presumably, based on its argument at the *Markman* hearing, Fitness Quest intends to rely on the drawing discussed in Claim 15:  Figure 7.  Transcript 156.

Figure 7 of the 749 Patent is a drawing of a device on which a person is resting prone – or on his front – on the depicted apparatus.  Fitness Quest seeks to limit the claim language to the front part of the torso only on the basis of this drawing.  This effort is impermissible.  A court construing claim terms may not limit its reading of those terms on the strength of a figure depicting  a single preferred embodiment.  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007); *see also TI Group Auto. Sys. (N. Am.), Inc., v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004).  Rather, "a patentee is entitled to a definition that encompasses *all* consistent meanings" of the term.  *TI Group*, 375 F.3d at 1136.

"All consistent meanings" of the term "torso" include the back as well as the front of the trunk of the body.  In the absence of an express statement in the 749 Patent that "torso" bears the constricted meaning proposed by Fitness Quest, the proposed limitation is not proper.  "Claims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee, and there is no such declaration here."  *Playtex Prods., Inc., v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005) (citation omitted).  The term "torso" therefore does not require construction.

Fitness Quest's presentation on the question of "back extensions" including only prone (face-down) back extension exercises was brief in the extreme at the hearing in this matter and seems to rest exclusively on the preferred embodiment, as reflected in Figure 7, showing a

human figure, resting prone on the embodiment of the invention proposed in that Figure. Fitness Quest contends that the embodiment that the claim teaches is a prone or face-down back extension, thereby apparently arguing that this precludes an embodiment in which supine or other non-prone back extensions could be performed. *See* Transcript 73. Monti's response was succinct: "If the inventor had intended Claim 15 to be referring to only prone back extensions, he would have added the word prone." Transcript 78. He didn't. No construction of this term is required.

**"force producing assembly"**

*Means plus function*

Fitness Quest contends that this term is a means-plus-function element, arguing that, as such, it does not identify a particular structure, but instead looks to the specification for its structure. Monti acknowledges that the term requires construction, but contends that this term is a structural element, rather than a means-plus-function element. He offers a proposed construction of the term as a structure and an alternative construction if the term is found to be a means-plus-function element. The term is not a means-plus-function element, and Monti's proposed structural construction is adopted.

In general, in the absence of the word "means," the disputed term is presumed not to be a means-plus-function element.

> It is well settled that "[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, P 6 applies. By contrast, a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, P 6 does not apply." "The term 'means' is central to the analysis."
>
> . . . .
>
> If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of § 112, P 6, prevails.

- 12 -

*Apex, Inc., v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003) (internal citations omitted).

Fitness Quest does not even acknowledge the presumption against "force producing assembly" being read as a means-plus-function term.  Fitness Quest instead argues that "force producing assembly" contains an insufficient delineation of structure to permit this Court to find that it is a structural term rather than a means plus function term.  Presumably, Fitness Quest intends to argue that its proposed construction overcomes the presumption against means-plus-function treatment because "force producing assembly" "fails to 'recite sufficiently definite structure' or else recites a 'function without reciting sufficient structure for performing that function."  *See CCS Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002), quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000).

"Our cases make clear, however, that the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome."  *Lighting World, Inc., v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).  Fitness Quest makes no meaningful effort to overcome this presumption.

In the context of a non-means-language term, the patentee is entitled to substantial latitude in the generality of the structure described therein before the presumption against means-plus-function analysis is overcome.  In a case construing closely analogous claim language, the Federal Circuit considered the term "connector assembly," which the district court had held to constitute a means-plus-function term, and reversed, finding the district court's approach "unduly restrictive."  *See Lighting World*, 382 F.3d at 1359.

> In considering whether a claim term recites sufficient structure to avoid application of section 112 P 6, we have not required the claim term to denote a specific structure.  Instead, we have held that it is sufficient if the claim term is used in common parlance or

> by persons of skill in the pertinent art to designate structure, even
> if the term covers a broad class of structures and even if the term
> identifies the structures by their function.

*Id.* at 1359-60 (citations omitted).   In construing the term "connector assembly," the court explained that the fact that the term did not call to mind a particular structure was not dispositive. "What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'"  *Id.* at 1360.

Here, Fitness Quest has not carried its burden of establishing that "force producing assembly" is *not* a structure.  The term "assembly" sufficiently defines a structure – albeit a general structure – so that the patent appropriately may cover more than one embodiment of the referenced structure.  "Force producing assembly" is not a means-plus-function term.

*Construction*

Monti proposed the only construction for this element in the event it was found not to be a means-plus-function element, offering the construction, "The components that are used together to store and release energy to produce a force."  Fitness Quest has objected that the construction is too general, but has proposed no substitute, preferring only to argue in favor of a means-plus-function construction.

This Court finds Monti's proposed structural construction proper.  It provides additional information to help understand the language of the disputed term, without improperly limiting the patent language beyond that intended by the patentee and approved by the Patent and Trademark Office.  Monti's proposed construction will be adopted.

**"selectively applying a force"**

The parties agree that this term requires construction; they disagree as to the proper construction to be applied.

- 14 -

Fitness Quest contends that its proposed construction, which involves the user's selection of the type and degree of force, is consistent with other uses of the term "selectively" or "selection" elsewhere in the patent.  Monti contends that Fitness Quest is mixing apples and oranges, as there are two different notions of selection/selectivity in the patent; one (this one) referencing the *device* acting selectively, and the other (found in Claim 16, among others) referencing the *user* selecting a particular adjustment to the device.

> Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.  Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.  For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.

*Phillips*, 415 F.3d at 1314-15 (internal citations omitted).

The construction proposed by Fitness Quest does not improve the clarity of the term at issue; it changes the term.  Nowhere in the term or the language surrounding it is the notion of *user* selection reflected.  Instead, the language reflects the action of the device, not the choice of the person using the device.  Under these circumstances, the construction proposed by Fitness Quest cannot be adopted.

The construction proposed by Monti, by contrast, more specifically and accurately reflects the concept to be conveyed by the term and its surrounding language.  Fitness Quest not having offered any revisions to Monti's proposed construction (other than the adoption of Fitness Quest's construction, which this Court already has declined), Monti's construction hereby is adopted.

**"biasing the guide member toward the first position"**

At the *Markman* hearing, counsel for the parties agreed that the proper

construction for this term was: "urging or pushing the guide member toward the first position." Transcript 198-99.  This Court has reviewed the term and the claim language surrounding it, and agrees that the proposed construction is proper.  The agreed construction therefore is adopted.

**"second position"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 199.  This Court therefore will not consider the proposed construction of this term.

**"supported upon the guide member"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 199-200.  This Court therefore will not consider the proposed construction of this term.

**"lower body of the user supported upon the body pad"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 200.  This Court therefore will not consider the proposed construction of this term.

**"the force producing assembly will apply supportive force urging the user toward the first position as the user performs back extensions moving from the first position to the second position and moving from the second position to the first position"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term would be redundant of the Court's previous determinations regarding construction of its component terms.  Counsel agreed that further construction of the language in this term therefore was not necessary.  Transcript 200-01.  This Court will not consider the proposed construction of this term.

*Claim 20 – entire dependent claim*

Fitness Quest contends that the language of Claim 20, a dependent claim to

independent Claim 15, includes no greater limitations than Claim 15 and seeks a construction to this effect.  Monti argues that Claim 20 adds the permissive element that the force producing assembly *may* selectively apply a force, thereby limiting the language of Claim 15.

> Construction of dependent claims is governed by 35 U.S.C. § 112, paragraph 4:
>
> > [A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed.  A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

*Id.*  "Indeed the statute stresses that a dependent claim must add a limitation to those recited in the independent claim."  *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006), citing § 112, para. 4.

Claim 20 uses no terms in addition to the terms already construed in connection with Claim 15.  It therefore requires no additional construction.  This fact does not inevitably lead, however, to the conclusion Fitness Quest would prefer, namely, that Claim 20 adds no limitations and therefore is invalid.  Further, even if Fitness Quest were correct, this Court will not leap to that conclusion at this time.  Concerned only with identifying claim terms requiring construction and then performing that construction, this Court declines to go any further.  This claim requires no construction.

### Claim 28

**Preamble:  "A multipurpose exercise apparatus adapted for providing an individual with support as a user moves between an upper first position and a lower second position during performance of an exercise"**

Unlike the Preamble to Claim 15, the parties were not able to reach an agreement that construction of the Preamble to Claim 28 was unnecessary.  Fitness Quest limited its request at the *Markman* hearing, and now primarily seeks construction of the term "multipurpose exercise apparatus" in the preamble, offering for its proposed construction: "an apparatus that

permits a user to perform two exercises:  (1) sit ups; and (2) lower abdominal flexion." Transcript 220.  Monti contended that construction was unnecessary, as the preamble was not a limitation, and then (if necessary) offered his own broader construction.  This Court determines that construction of the preamble in fact is not required.

Claim preambles, like all other claim language, are construed consistent with the basic principles of claim construction, including the principle that the language of the claim defines the scope of the invention protected by the patent.  *Bell Commun. Research, Inc., v. Vitalink Commun. Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995).

Whether a preamble to a claim requires construction depends on whether the preamble language limits the language found in the claim itself.  "[A] preamble simply stating the intended use or purpose of the invention will usually not limit the scope of the claim, unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly." *Boehringer Ingelheim Vetmedica, Inc., v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) (citation omitted).  "[P]reamble language will limit the claim if it recites not merely a context in which the invention may be used, but the essence of the invention without which performance of the recited steps is nothing but an academic exercise."  *Id.* (citation omitted). Stated differently,

> A claim preamble has the import that the claim as a whole suggests for it.  In other words, when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects.

*Bell Commun.*, 55 F.3d at 620 (citations omitted).  Whether the preamble to Claim 15 requires construction therefore depends on whether the language of the preamble is necessary to an understanding of the invention described in the body of the claim.

Fitness Quest asserts that the preamble to Claim 28 must be construed, and then

- 18 -

offers its construction. Monti, by contrast, contends that it does not act as a limitation on Claim 28 and therefore need not be construed. Fitness Quest contends that the initial use of the terms "first position" and "second position" in the preamble, each preceded by an indefinite article ("an" and "a", respectively), provides a necessary context to the use of those terms later in the elements of Claim 28. Fitness Quest Response Brief at 9-10. Fitness Quest further argues that Monti "clearly" relied upon the preamble language in the prosecution history of the 749 Patent. *Id.*

Fitness Quest's arguments are unavailing. The preamble to Claim 28, when reviewed in the context of the entire claim, does not constitute a limitation on the claim, as it is at best a summary description of the device more precisely described in the claim elements, rather than any kind of further-limiting language.

"[P]reambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure." *Catalina Marketing Int'l., Inc., v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). Here, the preamble to Claim 28 broadly describes the apparatus formed by the elements of Claim 28 and the purpose of it. As such, it does not limit the claim language and requires no construction.

The preamble contains the language "an upper first position and a lower second position." Fitness Quest contends that the preamble must be construed, so that these terms, used later in Claim 28, may be correctly understood. The basis for Fitness Quest's contention appears to be the adjectives "upper" and "lower," which Fitness Quest contends do not appear elsewhere in the claim. Strictly speaking, this is true. But the claim does contain the following language: "the first position is oriented above the second position." It is not a very daunting leap of faith to

understand from this language that the first position is the "upper" of the two, and the second position is the "lower" of the two.  The language in the preamble simply is not "'necessary to give life, meaning, and vitality' to the claim."  *Catalina Marketing*, 289 F.3d at 808, quoting *Pitney Bowes, Inc., v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).

Fitness Quest's reliance on the Manual of Patent Examining Procedure is equally unavailing.  Rather than providing the bright-line rule Fitness Quest suggested in the hearing – that the use of a definite article in the claim elements required reference back to a corresponding indefinite article in the preamble – the Manual is not so rigid.  *See* Transcript 52, 67; Fitness Quest Inc.'s Response to Mr. Monti's Opening Claim Construction Brief (Doc. 32) at 9-10.  "Obviously, however, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite.  If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite."  MPEP 2173.05(e).  As noted above, the scope of the claim, at least at to the issues raised by Fitness Quest, is reasonably ascertainable without resort to the preamble.

Finally, Fitness Quest contends that Monti relied on the preamble language in the prosecution of the patent, and it therefore should be understood as limiting Claim 28.  Fitness Quest Response Brief at 10.  While the prosecution history can be relevant to an understanding of whether a preamble requires construction, this Court is hard-pressed to read the excerpt referenced by Fitness Quest as demonstrating Monti's reliance on the language of the preamble *per se* rather than the claim elements in the prosecution of this patent.

The preamble to Claim 28 is not essential to an understanding of the language of the claim, and therefore does not require construction.

**"an elongated user support"**

At the *Markman* hearing, counsel for the parties agreed that the Court's decision

with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well. Transcript 213.  This Court therefore construes this term as it was construed in Claim 15:  "a central support and stabilizing member that is longer than it is wide."

**"body pad"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  This Court therefore holds, as it did with respect to Claim 15, that "body pad" does not require construction.

**"first end of the body pad"**

**"second end of the body pad"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to these terms in Claim 15, *supra*, governs these terms within Claim 28, as well. Transcript 213.  This Court therefore holds, as it did with respect to the same language in Claim 15, that these terms do not require construction.

**"an auxiliary body support adjustably coupled to the user support and extending from the second end of the user support adjacent the second end of the body pad"**

Fitness Quest's proposed construction, as presented at the *Markman* hearing, primarily seeks to construe the language "adjustably coupled," which Fitness Quest interprets as consisting of two elements:  a telescoping length adjustment and an angular adjustment. Transcript 229-31.  Monti contends that no construction is necessary.  Monti is correct.

The chief evil of Fitness Quest's proposed construction is that it looks to the preferred embodiment – and apparently only the preferred embodiment – of the invention as represented in Figure 8 to construe this term.  Fitness Quest is correct in contending that Figure 8 reflects a telescoping structure, with a male and a female member, that additionally is adjustable

as to angle with reference to the user support.  That said, there is nothing in Claim 28 tending to support Fitness Quest's contention that the concept of "adjustably coupled" begins and ends with this embodiment.  The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

Figure 8 of the 749 Patent reflects a drawing of a device on which a person is resting in a supine position on the depicted apparatus.  Fitness Quest seeks to limit the adjustability reflected in the language of Claim 28 to the specific adjustability features of this drawing.  Such an effort plainly is not permissible.  A court construing claim terms may not limit its reading of those terms on the strength of a figure depicting a single preferred embodiment. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007); *see also TI Group Auto. Sys. (N. Am.), Inc., v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004).  Rather, "a patentee is entitled to a definition that encompasses *all* consistent meanings" of the term.  *TI Group*, 375 F.3d at 1136.

As Monti noted at the *Markman* hearing, there is no requirement that the adjustability referenced in Claim 28 be accomplished by means of a telescoping construction, or that it provide for an angular adjustment.  "All consistent meanings" of the term "adjustably coupled" include embodiments beyond that reflected in Figure 8 and the claim language must not be so limited without the patentee's express consent to the limitation, which Monti plainly has not given here.  *See Playtex Prods., Inc., v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005) (citation omitted).  The referenced term does not require construction.

**"the auxiliary body support including a pivotally mounted pad assembly adapted for engaging different body parts in various orientations"**

Fitness Quest contends that the claim language is too broad, and proposes revised

language based chiefly on the embodiment reflected in Figure 8.  Monti denies that the claim requires construction.  Monti is correct.

Fitness Quest seeks to construe chiefly the term "pad assembly," adding language relating to a cushioning function.   Again, Fitness Quest references primarily the preferred embodiment as reflected in Figure 8 as support for its proposed construction, injecting additional language relating to the telescoping member referenced immediately above.  As this Court has exhaustively discussed, the preferred embodiment, standing alone, is not a basis for limiting the claim language.  In the absence of any indication that the patentee intends the claim language to be so limited, such a construction is improper.

It is worth noting that, on the one hand, Fitness Quest objects to the use of the term "an auxiliary body support" in the prior term in Claim 28, seeking to replace it with "an additional body support," but on the other hand, leaves untouched in this term the subsequent reference to "the auxiliary body support" – which presumably references the same feature.  The confusion this approach is likely to inject into the understanding of Claim 28 is not desirable.  This term does not require construction.

**"guide member"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  This Court therefore holds, as it did with respect to the same language in Claim 15, that this term is construed as follows:  "a structure that guides the directional movement of the user as the user performs the exercise."

**"pivotally secured"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well. This

Court therefore holds, as it did with respect to the same language in Claim 15, that this term is construed as follows:  "secured through a pivoting joint."

**"transversely oriented support extending across the user support"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  This Court therefore holds, as it did with respect to Claim 15, that "transversely oriented support extending across the user support" is not a term that requires construction.

**"body member"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 211.  This Court therefore will not consider the proposed construction of this term.

**"extending substantially across the entire lateral extent of the user support"**

At the *Markman* hearing, counsel for the parties agreed that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well. Transcript 212.  This Court therefore holds, as it did with respect to the same language in Claim 15, that this term does not require construction.

**"force producing assembly"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  This Court therefore holds, as it did with respect to Claim 15, that "force producing assembly" is not a means-plus-function term, and Monti's proposed construction – "the components that are used together to store and release energy to produce a force" – will be adopted.

**"selectively applying a force"**

The parties agreed in advance of the *Markman* hearing that the Court's decision

- 24 -

with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  This Court therefore holds, as it did with respect to Claim 15, that Monti's construction – "the force producing assembly applying an appropriate force to bias the guide member as needed during the exercise" – hereby is adopted.

**"biasing the guide member toward the first position"**

At the *Markman* hearing, counsel for the parties agreed that their agreement with respect to this term in Claim 15, *supra*, governs this term within Claim 28, as well.  Because the parties agreed that the proper construction for this term was: "urging or pushing the guide member toward the first position," Transcript 198-99, and because this Court already has determined that the proposed construction is proper, the agreed construction is adopted as to Claim 28, as well.

**"supported against the effect of gravity"**

At the *Markman* hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 212-13.  This term therefore does not require construction.

**"first position"**

The parties agreed in advance of the *Markman* hearing that the Court's decision with respect to this term in Claim 15 governs this term within Claim 28, as well.  Interestingly, this Court can find no indication that a determination was made with respect to this term in Claim 15.  Notwithstanding this unsettling fact, the term does not require construction.  The parties agreed that "second position" required no construction, Transcript 199, "first position" is so logically similar that it would be nonsensical to require construction of one and not the other.  This term requires no construction.

**"second position"**

As noted above, with respect to this term in Claim 15, *supra*, at the *Markman*

hearing, counsel for the parties agreed that construction of this term was not required.  Transcript 199.  No further consideration of this term therefore is required in Claim 28.

*Conclusion*

The terms as to which construction has been requested are to be construed as reflected in this Memorandum Opinion and Order and the attached Appendices, incorporated by reference herein.

**IT IS SO ORDERED.**


Dated:  August 16, 2007                              *s/  Sara Lioi*
                                                                **HONORABLE SARA LIOI**
                                                                **UNITED STATES DISTRICT JUDGE**