**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FITNESS QUEST INC., | ) | CASE NO. 5:06CV2691 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| JONATHAN MONTI, | ) | ORDER |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is a motion filed by Defendant Jonathan Monti ("Defendant" or "Monti") for leave to file his third amended counterclaims. (Doc. 227.) Specifically, Monti seeks to add as parties, two named and five unnamed individual Fitness Quest Inc. ("FQ") insiders/shareholder and to allege fraudulent asset transfer claims under Ohio law against FQ and its shareholders. Plaintiff Fitness Quest Inc. ("Plaintiff" or "FQ") has filed a brief in opposition (Doc. 230), to which Defendant has replied. (Doc. 231.) For the reasons that follow, Defendant's motion for leave to amend is **DENIED**.

## I.      BACKGROUND

The factual and procedural background of this case has been thoroughly discussed in the Court's prior opinions, as well as by the Federal Circuit's May 12, 2009 opinion (Doc. 205) on appeal, and the reader's familiarity therewith is presumed. Accordingly, in order to provide context for the discussion herein, the Court will briefly relate the basic factual and procedural events that give rise to this ruling.

A.  *Procedural History*

Subsequent to receiving a letter from Monti's attorneys in July 2006 (Doc. 1-4), alleging it had infringed Monti's United States Patent No. 6,932,749 ("the '749 patent") (Doc. 1-2), FQ filed the above-captioned action on November 11, 2006, seeking a declaratory judgment that it neither infringed the patent nor violated a confidentiality agreement between the two parties. (Doc. 1.) On February 28, 2007, Monti answered the complaint and asserted counterclaims against FQ, alleging patent infringement, breach of contract, and unjust enrichment. (Doc. 8.) On September 18, 2007, the Court granted Monti leave to file an amended counterclaim, which he filed on September 20, 2007, restating his previously asserted claims for patent infringement, breach of contract, and unjust enrichment. (Doc. 69).

Following dispositive motion practice, the Court granted summary judgment in favor of FQ, concluding that FQ had not infringed any of the three patent claims asserted by Monti, which in turn negated Monti's state law claims for breach of contract and unjust enrichment. (Doc. 202.) Monti appealed the Court's decision to the Federal Circuit Court of Appeals, which affirmed the Court's judgment of non-breach and non-infringement on two of the three patent claims, but reversed and remanded on the third claim—claim 28 of the '789 Patent. (Doc. 205.)

On remand, the Court took up the issue of claim construction on claim 28, and the parties engaged in settlement efforts. Following briefing by the parties and a hearing, the Court issued its claim construction order on June 20, 2011. (Doc. 223.) The parties then participated in a mediation session (Doc. 226) and settlement discussions, but their attempts at resolution failed. Subsequently, Monti filed the instant motion for leave to file his third amended counterclaims.

2

B.  *The Proposed Amendment*

The proposed third amended counterclaims, which were filed under seal,  restate Monti's remaining patent infringement claims against FQ and add two named defendants and several unnamed "John Doe" defendants—all described as shareholders and/or insiders of FQ— on previously unasserted claims for fraudulent and/or preferential transfers under Ohio's Uniform Fraudulent Transfer Act ("UFTA"), Ohio Rev. Code § 1336.01, *et seq*. Specifically, the amended counterclaims are as follows: (1) that shortly after FQ incurred a substantial debt, FQ and its shareholders concealed certain asset transfers by the company to insiders and shareholders without receiving a reasonably equivalent value for the assets and property transferred and with the intent to hinder, delay or defraud its creditors, particularly Monti, in violation of Ohio Rev. Code § 1336.04(A)(1); (2) that such transfers further violated Ohio Rev. Code § 1336.04(A)(2) because FQ did not receive a reasonably equivalent value for the assets and property transferred and because the transfers were made at a time when FQ and its shareholders knew that the company was insolvent and/or that it would be rendered insolvent as a result of the transfers; and (3) that the subject transfers also violated Ohio Rev. Code § 1313.56 because the transfers were made in contemplation of, and with knowledge of, FQ's insolvency or resulting insolvency and were made conspiratorially with the design and intent to prefer FQ's insiders and shareholders.

Monti bases his proposed amended counterclaims on the following factual allegations. Beginning in 2006, FQ issued dividends to its shareholders, including the named and unnamed defendants identified in the amended counterclaims. The dividends were almost four times FQ's net income in 2006. Further, FQ financed these dividends by an increase in

borrowing, which rendered it insolvent, resulting in a negative net worth. Finally, from 2006 to 2010, Monti believes that FQ paid excessive salaries and bonuses to its insiders and shareholders and entered into other transactions paying royalties and split profits to entities, which, in some instances, are believed to be owned, directly or indirectly, by FQ insiders or shareholders.

## II.    DISCUSSION

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Further, the rule provides that "[t]he court should freely give leave when justice so requires." *Id*. A court should deny a motion to amend, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). FQ opposes Monti's motion on the grounds of prejudice, delay, and futility.

### A.  Futility

The Court begins with the issue of futility because "[f]utility, alone, can constitute a satisfactory ground for denying a motion for leave to amend." *Phillips v. Smith*, No. 5:09CV1848, at *2 (N.D. Ohio June 2, 2010). *See generally, Wiedbrauk v. Lavigne,* 174 F. App'x 993 (6th Cir. 2006) (affirming denial of motion to amend when amendment would have been futile). Where a claimant has not alleged a prima facie case, a motion to amend is futile because leave to amend would not establish a cognizable clam and could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555 (citations omitted).

FQ argues that Monti's new claims are futile because they would not survive a motion to dismiss, as the claims are barred by the applicable statute of limitations contained in Ohio Rev. Code § 1336.09 and because he has failed to state a plausible claim for relief. Monti argues that the limitation period did not begin to run until he discovered the fraudulent nature of the transfers, which he alleges was not until August 2011 when "FQ boasted to Monti for the first time that it was now effectively judgment-proof and contemplating bankruptcy." (Doc. 231 at 7, citing Ex. A, Doc. 231-1,Stein Aff. ¶¶ 2-3.) Moreover, he contends that he did not received FQ's financial statements for years 2008 through 2011 until August 2011, and only just discovered that FQ engaged in further transfers "in an effort to keep itself insolvent and shielded from liability." (Doc. 231 at 8.)

The proposed amended counterclaims allege that, beginning in 2006, FQ has "systematically undertaken a continuous course of conduct to remove the value from the company through a number of transactions to frustrate the collection of any judgment by Mr. Monti." (Doc. 229 ¶ 10.) However, the only factual allegations set out in the proposed

counterclaim that plausibly state a claim for relief are those related to FQ's 2006 dividend distribution to its shareholders.

The remaining factual allegations are that, from 2006 to 2010, upon Monti's "information and belief," FQ entered into a series of "other fraudulent transactions" with its insiders and shareholders (Doc. 229 ¶ 14); is "believed" to have paid "excessive salaries and bonuses" to its insiders or shareholders (Doc. 229 ¶ 14); and "upon information and belief" paid royalties and split profits, "at least some" of which were paid directly or indirectly to insiders or shareholders. (Doc. 229 ¶ 15.) These speculative and conclusory allegations are insufficient to provide the Court with any basis from which it could reasonably infer that FQ or any of the other putative defendants Monti seeks to join are liable for the conduct alleged. None of these facts support an inference that any post-2006 transaction was made with the intent to hinder, delay or defraud its creditors, including Monti, in violation of Ohio Rev. Code § 1336.04(A)(1),[1] (Count

---

[1] Ohio Rev. Code § 1336.04(A) pertains to transfers or obligations that are fraudulent and provides, in pertinent part, as follows:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1)  With actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
>> (a)  The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>>
>> (b)  The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Ohio Rev. Code § 1336.04(A).

2);[2] without receiving a reasonably equivalent value in exchange in violation of § 1336.04(A)(2), (Count 3); or "in contemplation of insolvency and with a design to prefer one or more creditors" in violation of Ohio Rev. Code § 1313.56, (Count 4).[3] Indeed, there are no facts alleged with respect to FQ's financial condition after 2006. Accordingly, the Court denies without prejudice Monti's motion for leave to assert any fraudulent or preferential transfer claims with respect to the alleged post-2006 transfers.

As for the 2006 distribution, even if Monti's factual allegations are assumed true, his claims based thereon would be subject to dismissal as time barred. Dismissal is proper "where the face of the complaint reveals that the time for filing has lapsed without explanation for the delay, such as justifiable delay in discovery of the claim." *Nw. Nat'l Ins. Co. of Milwaukee v. Joslyn*, 53 F.3d 331 (Table), 1995 WL 270995, at *3 (6th Cir. May 8, 1995) (citing *Hoover v. Langston Equip.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[W]hen the face of the complaint affirmatively indicates that the time limit for bringing the claim has passed, [the] plaintiff may [not] escape the statute [of limitations] by saying nothing.")).

---

[2] Moreover, fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) is applicable to claims under Ohio's UFTA that allege that the transfer in question was made with the "intent to hinder delay, or defraud one or more creditors" of the transferor. *Van-American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 543 (S.D. Ohio 2000). Consequently, Monti is required to set forth the circumstances constituting such fraud, and must "allege the time, place, and content of the alleged misrepresentation on which he . . . relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (citation omitted). "Rule 9(b) prohibits [Monti] from making general unsubstantiated charges of fraud lacking particularity." *Van-American*, 191 F.R.D. at 543 (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992)).

[3] "Section 1313.56 does not apply unless the person to whom such *sale, conveyance, transfer, mortgage or assignment* is made, knew of such fraudulent intent on the part of such debtor." *In re Roberds, Inc.*, 313 B.R. 732, 739 (S.D. Ohio 2004) (emphasis retained); *see also, McKinley Fed. Sav. & Loan v. Pizzuro Enters., Inc.*, 585 N.E.2d 496, 501 (Ohio Ct. App. 1990) (transferee's knowledge of debtor's fraudulent intent is a material element in action under § 1313.56). Although Monti alleges that FQ's insiders and shareholders knew of its insolvency or pending insolvency at the time of the alleged transfers, the amended counterclaims are devoid of any factual basis from which the Court can infer that these transferees knew of FQ's alleged fraudulent intent.

7

Ohio Rev. Code § 1336.09 provides, in relevant part, as follows:

A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 . . . of the Revised Code is extinguished unless an action is brought in accordance with one of the following:

(A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant;

(B) If the transfer or obligation is fraudulent under division (A)(2) of section 1336.04 . . ., within four years after the transfer was made or the obligation was incurred[.]

Ohio Rev. Code § 1336.09 (A) – (B). Further, although Ohio Rev. Code § 1313.56, "does not expressly contain a limitations period, Ohio courts have interpreted this statute . . . to have a limitations period of four years following discovery." *James v. McCoy*, 56 F. Supp. 2d 919, 930 (S.D. Ohio 1998) (citing *First &Citizens' Nat'l Bank of Elizabeth City v. Seip*, 183 N.E. 448, 448 (Ohio Ct. App. 1931)).

On December 20, 2007, just prior to the close of discovery on December 31, 2007, Monti deposed Craig Waters ("Waters"), the vice president of business development and former chief financial officer of FQ, and inquired into the financial status of FQ. During the examination, Monti questioned Waters regarding the contents of an audit report of FQ's parent company, Fitness Holdings, Inc. ("FH"), for the years ending December 29, 2006 and December 30, 2005, which FQ had disclosed to Monti earlier that month. Further, on January 16, 2008, FQ produced to Monti, its 2006 tax return. Plaintiff contends that both of these documents disclosed the 2006 transfers.

Monti filed his motion for leave to file his proposed third amended counterclaims (Doc. 230) on November 11, 2011. Even if the Court were to assume that FQ's 2006 dividend

8

payments were made at the end of that year, Monti's amended counterclaims based thereon are clearly barred by the applicable four-year limitations period.

Monti argues that his claims are not time barred because they are subject to the "discovery" exception contained in § 1336.09(A), which provides that a claim under 1336.04(A)(1) may be filed within one year after the transfer was or reasonably could have been discovered by the claimant. Monti concedes that he has been aware of FQ's 2006 dividend payments since December 2007, but asserts that the one-year limitations period did not begin to run until he reasonably could have discovered the "fraudulent" nature of FQ's transfers. A party "who seeks to rely on 'the discovery rule[,]' [however, must] affirmatively and particularly plead the date of discovery, as a material averment . . ., or face dismissal of the [claim]." *Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981) (citing Fed. R. Civ. P. 9(b)) (dismissing complaint alleging fraudulent conveyance in violation of § 1336.04 filed more than four years after the conveyance occurred where plaintiff did not affirmatively plead delayed discovery of the fraud or provide a date of discovery). The proposed third amended counterclaims do not affirmatively plead delayed discovery, nor do they contain any factual allegations with respect to when Monti allegedly discovered the fraudulent nature of FQ's 2006 dividend payments.

Moreover, even if Monti did sufficiently plead delayed discovery, the statute of limitations on Ohio fraudulent transfer claims begins to run on the date that a creditor could have discovered the transfer, and not when the alleged fraud was discovered. *In re Spitaleri*, No. 05-94988, ADV. 06-1122, 2006 WL 4458357, at *2 (N.D. Ohio May 9, 2006). In *Spitaleri*, the Bankruptcy Court for the Northern District of Ohio observed that Ohio's former fraudulent

9

conveyance statute contained a savings clause that expressly provided that "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." *Id.* Whereas Ohio's UFTA, which became effective in September 1990,

> specifically contemplates "constructive discovery" by permitting actions brought outside the four-year period only if they are brought "within one year after the transfer . . . was or reasonably could have been discovered." This differs from the old statute first, by focusing on the "transfer" rather than the fraudulent nature of the transfer, and second, by tying the statute of limitations to when the transfer "reasonably could have been discovered." Thus, under the current law, once a fraudulent transfer is made, an unsecured creditor . . . generally must bring a claim within four years of the transfer. A claim may be brought more than four years after the transfer but only if it is brought within one year after the transfer "was or reasonably could have been discovered." *See James v. McCoy,* 56 F.Supp.2d 919, 930 (S.D. Ohio 1998) (holding that claimant was barred from recovery because he failed to bring his claim within one year of discovery), *aff'd* 181 F.3d 101 (6th Cir. 1999); *see also Helman v. EPL Prolong, Inc.,* 139 Ohio App. 3d 231, 247–48, 743 N.E.2d 484 (2000).

*Id. See also, Davis v. McDowell*, No. H-06-001, 2006 WL 2242875, at *2 (Ohio Ct. App. June 30, 2006) (statute of limitations began to run on date that plaintiff was told of transfer); *Cunningham v. Cunningham*, No. 01CA007938, 2002 WL 1263964, at *2 (Ohio Ct. App. May 29, 2002) (plaintiff required to assert claim under § 1336.04(A)(1) within one year after she could have discovered or reasonably could have discovered that property had been transferred).

Here, FQ provided Monti with its parent company's audit report, as well as its tax return for 2006, both of which contained information related to the 2006 dividend payments made by FQ to its shareholders and insiders. FQ gave these documents to Monti in December of 2007 and January 2008. More than one year has passed since Monti "reasonably could have […] discovered" the transfers. Therefore, Monti's claims with respect to the 2006 transfers by FQ are barred under § 1336.09(A). Accordingly, the Court denies his motion for leave to amend his counterclaims to include any claims based on the 2006 transfers.

10

*B.  Diligence and Prejudice*

Because the Court has determined that Monti's proposed third amended counterclaims would be futile, it need not address the parties' arguments with respect to diligence and prejudice at this time.

**III.    CONCLUSION**

For all of the foregoing reasons, defendant's motion for leave to file his third amended counterclaims is **DENIED**.

**IT IS SO ORDERED**.

Dated: August 20, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

11